## HOUSTON v. COMMISSIONER OF INTERNAL REVENUE.
### HENRY v. SAME.

#### PORTER et al. v. SAME.
#### Nos. 4210, 4211, 4224.

Circuit Court of Appeals, Third Circuit.
Oct. 30, 1931.

William Clarke Mason, of Philadelphia, Pa., for petitioners.

J. Louis Monarch, of Washington, D. C., for respondent.

Before WOOLLEY and DAVIS, Circuit Judges, and JOHNSON, District Judge.

DAVIS, Circuit Judge.

These cases are here on motion to remand to the United States Board of Tax Appeals. A single question of law is involved, and all three cases will be disposed of in one opinion.

The petitioners, in making their income tax returns for the year 1920, claimed that they had sustained losses in a certain transaction entered into in 1906. This transaction related to the reorganization of the Real Estate Trust Company of Philadelphia which was closed because of excessive loans made to Adolph Segal, who deposited with it certain stocks and bonds as collateral security. It was proposed to reorganize and reopen the company if a fund of $2,500,000 could be raised by subscriptions. The petitioners subscribed to this fund, and these subscriptions gave them an interest in the Segal securities which were to be administered by the trust company. The subscribers hoped to realize from these securities enough to pay the subscriptions and also a profit. But their hopes did not materialize, and in 1920 it was thought best to dispose of the securities, and so they were sold. The petitioners were allotted their pro rata share of the securities. In making their income tax returns for the year 1920, they claimed as a loss the difference between their subscriptions (cost to them of the securities) and what they received for them when sold.

The Commissioner of Internal Revenue disallowed the claims, and the United States Board of Tax Appeals sustained his determination on the ground that the value of the securities on March 1, 1913, must be established as well as their cost, and this had not been done. On appeal to this court, the redetermination of the Board of Tax Appeals was reversed, and the income tax returns of the petitioners, so far as they were affected by the deductions here in question, were approved, 39 F. (2d) 351, 358, 360. The Commissioner appealed to the United States Supreme Court, which reversed our judgment, 51 S. Ct. 413, 416, and remanded the case to this court for further proceedings in a mandate which contains the following language:

"On consideration whereof, It is now here ordered and adjudged by this Court that the judgment of the United States Circuit Court of Appeals in this cause, be, and the same is hereby reversed.

"And it is further ordered, That this cause be, and the same is hereby, remanded to the said Circuit Court of Appeals for further proceedings in conformity with the opinion of this court.

"April 13, 1931.

"You, therefore, are hereby commanded that such further proceedings be had in such cause, in conformity with the opinion and judgment of this Court, as according to right and justice, and the laws of the United States, ought to be had, the said writ of certiorari notwithstanding."

Thereupon the petitioners filed a motion in this court to remand the cases to the Board of Tax Appeals so as to give them an opportunity to submit before it evidence of the value of the Segal securities here involved on March 1, 1913. The Commissioner opposes that motion on the ground that this court is without power to remand the cases to the Board. The question of the power of this court is therefore the first issue.

The statute creating the United States Board of Tax Appeals (USCA, title 26, § 1226(b) gives this court power "to affirm or, if the decision of the board is not in accordance with law, to modify or reverse the decision of the board, with or without remanding the case for a rehearing, as justice may require." We therefore had power when the case was here before to remand it to the Board of Tax Appeals, if its decision was not in accordance with law.

■ We were commanded by the mandate of the Supreme Court to take such further proceedings in the case, in conformity with its opinion and judgment, as according to right and justice ought to be had. The Supreme Court did not specifically tell us what ought to be done, but following its usual policy, as laid down in the case of Ex parte Medway, 23 Wall. (90 U. S.) 504, 23 L. Ed. 160, it left us free to proceed in accordance with our own idea of what law and justice required when all the facts in the case, and the power conferred upon us by the statute, are considered.

The mandate of the Supreme Court restored to this court the power which it had when the case was first here, other than the questions which it decided. The question of our power to remand this case was not decided. Liberty National Bank v. Bear (C. C. A.) 4 F.(2d) 240, 242, certiorari denied 268 U. S. 693, 45 S. Ct. 512, 69 L. Ed. 1160; In re Sanford Fork & Tool Co., 160 U. S. 247, 256, 16 S. Ct. 291, 40 L. Ed. 414; In re Louisville, 231 U. S. 639, 645, 34 S. Ct. 255, 58 L. Ed. 413; Arkadelphia Milling Co. v. St. Louis Southwestern R. Co., 249 U. S. 134, 143, 39 S. Ct. 237, 63 L. Ed. 517.

■■ We therefore have power to deal with that question just as we could have done when the case was here before. The question arises as to what power we then had. This is stated by the statute which confers upon us power to remand the case for a rehearing "if the decision of the board is not in accordance with law." The final question is whether or not the decision of the Board was "in accordance with law." If it was, we cannot remand; if it was not, we can.

The vital issue on which the decision of this case turned was the value of the rights of the petitioners in the Segal securities on March 1, 1913. This issue was raised in the answer in two of the suits, and on this issue the Board of Tax Appeals based its opinion, saying: "If he disposed of them (rights in the Segal securities) in 1920 or in 1921, then under section 202(a) (1) of the Revenue Act of 1918 as interpreted by the courts and by this Board, and under the express provisions of section 202(b) the loss, if any, from the disposition of those rights, the subject matter of the entire transaction, would be the difference between what was ultimately received for the rights and their cost, or March 1, 1913, value, whichever was lower." In the determination, therefore, of the loss sustained by the petitioners, it was necessary to establish the fair market value of the rights on March 1, 1913, and their cost in 1906, but they did not submit any evidence of the value on March 1, 1913.

This issue was squarely raised on appeal to this court. The petitioners contended that their loss could be determined only by finding the difference between the value of what was received and the cost of their rights; while the Commissioner contended that their loss, if any, was the difference between what was ultimately received for the rights in 1920 and their cost in 1906, or their value on March 1, 1913, whichever was lower. He held that it was impossible to determine the value of the rights on March 1, 1913, and accordingly the only basis of determining loss was cost and return, what they subscribed in 1906, and what they received on liquidation in 1920. But in this we were in error.

The Supreme Court said that the value of the rights on March 1, 1913, was a necessary element; that it was just as necessary for the petitioners on whom the burden rested to prove value on that date as it was to prove cost in 1906, and that the impossibility of proving value on March 1, 1913, did not under the statute relieve the petitioners from the necessity of establishing the fact which the statute makes a prerequisite to the allowance of a loss; that, if a litigant in a tax case does not or cannot submit evidence from which one of these essential facts can be established, it is a misfortune to be borne by him, just as it must be borne in any other case on the failure of proof.

In other words, the Supreme Court held that, on the record before the Board of Tax Appeals, it correctly decided the case, and so its decision "was in accordance with law," just as it would have been upon the failure of proof in any other case coming from a judicial tribunal to an appellate court. However sorry we may feel for these or any litigants who fail to produce evidence so that the case may be considered on its merits, we are bound by the rules of law. The petitioners had the burden of establishing the necessary facts from which their loss could be deter-

mined. They had their day in court and opportunity to submit evidence, if they had any, to establish this fact. They either could not produce such evidence or thought it was unnecessary. However that may be, the Board of Tax Appeals decided the case in accordance with the law as declared by the Supreme Court, and, its decision being "in accordance with law," we have never had power to remand the case. It follows that the petitions must be denied.