C. C. Gunn v. Commissioner.
Gunn v. Commissioner
Docket Nos. 28673, 28674.
United States Tax Court
T.C. Memo 1956-24; 1956 Tax Ct. Memo LEXIS 272; 15 T.C.M. (CCH) 115; T.C.M. (RIA) 56024; January 27, 1956
*272 Net-worth method. - Respondent's use of the net-worth method, and the deficiencies thereby determined, upheld. Fraud. - Part of deficiencies for 1942 to 1944, inclusive, was due to fraud with intent to evade tax, and returns for those years were fraudulent. Husband-wife partnership. - Petitioner's evidence insufficient to prove that he and his wife were partners in 1946. James J. Waters, Esq., 712 Commerce Building, Kansas City, Mo., for the petitioner. W. B. Riley, Esq., and Charles Sullivan, Esq., for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion Respondent determined deficiencies in income tax against petitioner for the calendar years 1942 to 1946, inclusive, and 50 per cent fraud penalties for the years 1942 to 1944, inclusive, as follows: Deficiency
50% Penalty
Year
Income Tax
(Section 293(b))
1942
$ 2,590.07
$1,295.03
1943
15,240.87
8,281.68
1944
11,668.51
7,960.87
1945
14,153.96
1946
4,573.56 Respondent's motion at the end of the hearing to amend his answer to conform to the proof by alleging increased deficiencies for 1943 and 1944 was granted. The questions presented are (a) whether *273 respondent was justified in using the networth plus non-deductible expenditures method in determining the amount of petitioner's income for the years 1942 to 1944, inclusive, on which the determination of deficiencies is based, (b) whether any part of a deficiency that may be found against petitioner is due to fraud with intent to evade tax, (c) whether income reported by petitioner's wife for 1946 was earned by her in partnership with petitioner or was properly attributable to petitioner. Findings of Fact Some of the facts have been stipulated. The stipulation is made a part of our findings of fact. C. C. Gunn, hereafter called petitioner, is an individual whose residence during the years in question was in Van Buren, Arkansas. His returns for the years 1942 to 1946, inclusive, were filed with the collector of internal revenue for the district of Arkansas. Petitioner is a high school graduate. His wife is Eddie Gunn, who is not a party to this proceeding. They have three children. Petitioner is in the wholesale fruit and vegetable business; he buys farm produce for resale. He started this business as a sole proprietorship in 1935 under the name of C. C. Gunn Produce Company. *274 During the taxable years petitioner also operated a farm in partnership with his brother and engaged in a few joint business ventures involving the sale of produce. For the calendar years 1942 to 1946, inclusive, petitioner timely filed individual income tax returns reporting the following net income and tax due: Year
Net Income
Tax Liability
1942
$ 5,687.36
$ 685.48
1943
5,818.06
903.26
1944
14,370.80
3,975.56
1945
18,818.37
6,369.19
1946
15,043.08
3,860.35
On the 1942 return it was indicated that the return was prepared on a cash basis. On the 1943 return the question whether the return was prepared on the cash or accrual basis was left unanswered. Petitioner's returns for the years 1942, 1945 and 1946 each bore the signature of the person, other than the taxpayer or his agent, who had prepared the return. The 1943 and 1944 returns bore no signature of a person, other than the taxpayer or his agent, who had prepared the return. Petitioner's returns for all of the years in question were signed by him. On April 24, 1946, after an examination of petitioner's returns for some of the years in question here had been started by respondent, petitioner *275 filed amended individual income and victory tax returns for the calendar years 1941, 1943 and 1944, on which he reported the following net income and tax due: Year
Net Income
Tax Liability
1941
$ 9,719.73
$1,149.14
1943
9,018.06
2,103.47
1944
22,548.82
8,228.80 The increased income reported in the amended returns was due to the inclusion of income from sales that had not been previously reported. These amended returns bore the name of an accountant as the person who had prepared them. They bore also the notation that the returns were prepared from information furnished by the taxpayer but without verification thereof. In April 1946, petitioner filed individual income tax returns for the calendar years 1938, 1939 and 1940, for which years he had not previously filed returns. These returns were prepared on the cash basis and bore the name of an accountant as the person who had prepared them. The following net income and income tax liability were reported on the foregoing returns: Year
Net Income
Tax Liability
1938
$ 5,316.22
$ 84.65
1939
11,836.06
581.60
1940
14,249.56
1,006.94 In a statement accompanying each of these returns *276 it was explained that prior to 1941 the taxpayer maintained no record of his business transactions and that the income reported on the returns had been computed by first determining the taxpayer's net worth as of December 31, 1944 and "working it back" to the years covered by the returns. For the calendar year 1945 petitioner's wife, Eddie Gunn, filed an individual income tax return reporting an adjusted gross income of $24,173.32, a net income of $21,755.99 and an income tax liability of $8,601.03. The return was unsigned but bore the name of an accountant as the person who had prepared the return. The income had been assigned by petitioner to his wife and was reported on her return as having been derived from sales of produce. In determining the deficiency for 1945 against petitioner, respondent included the above adjusted gross income reported by petitioner's wife in the income of petitioner for 1945. Petitioner has conceded that such income is properly taxable to him. In 1946 petitioner and his wife signed an agreement to carry on a general fruit and produce business in equal partnership. The agreement, dated January 1, 1946, stated that the partnership was capitalized at $30,000, *277 each partner to contribute one-half of this amount. The $15,000 contribution of petitioner's wife was received by her from petitioner. Petitioner was to have active management of the partnership and was to draw a salary of $200 a month. The agreement could be ended by consent of the parties at any time. For the calendar year 1946 petitioner's wife timely filed an individual income tax return, signed by her, in which she reported a net income of $8,844.06 and an income tax liability of $1,973.14. Respondent's notice of deficiency for the years 1942 to 1945, inclusive, was sent by registered mail to petitioner on April 14, 1950. The notice of deficiency for 1946 was sent by registered mail to petitioner on March 7, 1950. If the respondent's use of the net worth plus non-deductible expenditures method of computing petitioner's income is upheld, the parties have agreed that the following partial list of petitioner's assets and liabilities on the dates indicated may be taken into account in determining annual increases in petitioner's net worth: Assets
12/31/42
12/31/43
12/31/44
Cash in Banks less checks outstanding
$ 4,685.01
$ 5,060.62
$12,883.29
U.S. Bonds
3,000.00
3,256.25
30,000.00
Accounts Receivable: Trade Accounts
0
8,060.18
697.32
John Gunn - Farm Account
13,441.82
14,359.90
John Gunn-Personal
1,111.12
2,600.00
Inventory
3,254.47
2,407.00
6,866.45
Real Estate: 202 North 19th Street
1,000.00
1,000.00
1,000.00
Home
0
8,500.00
9,079.80
Farm Land
0
0
1,426.65
Jewelry
0
0
1,000.00
Livestock
0
0
1,000.00
Prepaid Expense
844.08
0
0
Motor Equipment
10,312.93
14,075.00
19,818.48
Building, Equipment, Office Furniture and Fixtures
0
4,343.26
6,277.07
Accounts Payable
$ 2,945.23
$ 1,369.74
$0
Accrued Social Security Taxes
26.22
39.90
0
Accrued Arkansas Unemployment Taxes
35.40
53.86
0
Accrued Federal Unemployment Taxes
51.90
42.94
0
Federal Withholding Taxes
17.68
121.61
0
Accrued Sales Taxes
0
0
66.01
Reserve for Depreciation
5,503.94
4,901.66
8,789.92
*278 Petitioner's net worth on December 31, 1941, was $5,895.94. During the taxable years in question petitioner did not use a double-entry method of accounting. His business records were kept during those years by persons with little bookkeeping experience. In 1942 petitioner did not make a daily record of expenses or maintain records of cash or checks. During the other taxable years a single-entry memorandum type of accounting was kept. Invoices were issued for some sales made by petitioner and copies kept as a record of the sales; but in 1943 and 1944 substantial amounts were received by petitioner from sales of produce for which no invoices were issued. A few invoices of sales were voided by mistake. Some of the receipts from the sale of produce were deposited in petitioner's bank account; others were kept by petitioner, some of these being used for the needs of the business. During the years in question petitioner's bank deposits greatly exceeded the amount of recorded receipts from sales. Accounts receivable and accounts payable ledgers were not maintained. An inventory account was not carried on the books of the company, but periodic inventories were taken. An expense ledger *279 was kept, but there were omissions in posting items from the stubs of the checks used to pay expenses to the expense ledger; and the amounts posted were not always the same as the amounts of the supporting checks or invoices. Large sales made to petitioner were generally invoiced; most small sales were not. At various times during the taxable years petitioner deposited his own funds in five different bank accounts. The accounts were in his name, the names of his wife, his brother, his daughter and his sister-in-law. The account in petitioner's name showed a zero balance on January 1, 1942. In 1943 petitioner bought a home for $8,500. It was paid for by petitioner's drawing two checks - one for $6,500, the other for $2,000 - on a bank account that was in the name of his sister-in-law but which contained petitioner's funds and was "Subject to signature of C. C. Gunn only." In August 1944 petitioner bought through a bank $20,000 worth of United States Government bonds. They were paid for by debiting the bank account in his wife's name in the bank through which the purchase was made. The funds for this account had been supplied by petitioner. In the same year petitioner bought $10,000 *280 worth of United States Government bonds. These bonds were paid for by petitioner's endorsing checks made out to him in payment of produce sold by him. Between the period February 10, 1939, through July 16, 1943, petitioner borrowed from and repaid the following amounts to either the Peoples Bank and Trust Company of Van Buren, Arkansas, or the Commercial Bank of Alma, Arkansas: Date of Loan
Amount
February 10, 1939
$ 400.00
April 27, 1940
756.96
December 4, 1940
605.75
March 29, 1941
600.75
April 23, 1941
1,200.00
September 19, 1941
1,000.75
January 2, 1942
500.00
March 2, 1942
1,000.75
June 30, 1943
2,000.00
Opinion TIETJENS, Judge: Petitioner argues that respondent's use of the net-worth method of determining his taxable income for the years 1942 to 1944, inclusive, was not justified because petitioner's income for those years could have been determined from the books and records kept in his business. Section 54 of the Internal Revenue Code of 1939 requires every person liable to income tax to keep such records as the Commissioner, with the approval of the Secretary of the Treasury, may prescribe. The Regulations (section 29.54-1) prescribed *281 pursuant to this authority require. "Every person subject to the [income] tax * * * for the purpose of enabling the Commissioner to determine the correct amount of income subject to the tax, [to] keep such permanent books of account or records, including inventories, as are sufficient to establish the amount of the gross income and the deductions, credits, and other matters required to be shown in any return under chapter 1. * * *" The testimony of petitioner's bookkeeper and of an accountant who was called in to straighten out petitioner's books after his returns had been questioned, as to the existence for some of the years in question of sales invoices, expense ledgers, bank statements, cancelled checks and check stubs, all relating to petitioner's business, would at first give the impression that although petitioner's bookkeeping system was rudimentary, it was sufficiently adequate to provide a basis for computing the correct amount of his income subject to tax. None of these records, except petitioner's bank statements, was introduced in evidence. Respondent's questioning showed that even this rough system was not accurately kept. Sales in substantial amounts made by petitioner *282 were not invoiced or otherwise recorded (except that some of the payment checks passed through petitioner's bank account). Some sales invoices were incorrectly voided and their amounts not included in gross sales. On the expense side there were omissions and distortions. Checks in payment of produce were drawn by petitioner in excess of the amount of the actual expense, and there was no showing what the excess amount was used for. There was no record of many expense items that were paid in cash. The task of appraising the adequacy of petitioner's books and records on the basis of general statements about the existence of sales invoices and expense ledgers without actually seeing them is difficult enough, but this testimony loses its probative significance when it is shown that there were glaring inadequacies and omissions in maintaining such books and records. To show what his true income for 1943 and 1944 was, and that it could have been determined from his books and records, making resort to the net-worth method unnecessary, petitioner introduced in evidence a statement of his income and expenses for 1943 and 1944, which showed net income considerably less than that determined *283 by respondent on the basis of increases in petitioner's net worth over those years. The statements were prepared by the accountant retained by petitioner principally from information supplied by petitioner's bookkeeper, which was in turn obtained from petitioner's books and records. We have already commented on the inadequacy of petitioner's books, and we are reluctant to attach a significance to the income statements prepared by petitioner's accountant greater than the sources underlying their preparation, unless petitioner is able to show that the original inadequacies were in some way corrected in preparing the statements. When questioned about their preparation, petitioner's accountant explained that he was not able to verify many of the expense items that went into the statements. The amount of total sales was computed on the basis of existing sales invoices and from petitioner's deposits in one bank account; whereas, as we have pointed out, not all sales were invoiced by petitioner and sales receipts found their way into five bank accounts maintained by petitioner over the taxable period. It was not possible for many of petitioner's cash dealings - either sales or expense payments *284 - to be traced accurately. We feel therefore that the income statements offered by petitioner have no greater reliability than the original books and records that were their source, and that respondent's use of the net-worth method was justified under the circumstances here. The parties have agreed upon the items and their amounts that go to make up petitioner's net worth during the years in question. They disagree as to petitioner's net worth immediately prior to the taxable period, the starting point from which the increases in his net worth over the years in question could be computed. (No mention is made of petitioner's receiving taxfree income between 1942 and 1944.) There was general testimony to the effect that petitioner had substantial amounts of cash on hand that he used in his business. However, there was no showing with any specification as to how much money petitioner had, nor, more important, whether the money was derived from money or assets that petitioner had prior to the taxable period. The inference that we draw from the testimony about petitioner's carrying substantial cash amounts on his person, was that they were business receipts that were used to carry on *285 cash transactions in the business. In light of the informal way that petitioner kept his books, this seems to us a more plausible inference than that such funds were derived from assets had prior to the taxable period. Further, respondent has shown that between February 1939 and January 2, 1942 petitioner made seven bank loans varying in amounts between $400 and $1,200. While these borrowings in the period immediately prior to the years in question do not necessarily preclude petitioner's having money on hand at the same time, they at least lay the burden on petitioner of proving with more definiteness than he has done here, that he actually had the claimed amounts of cash on hand, and when he had these amounts. And this petitioner has failed to do. Therefore we have found as a fact that petitioner's net worth at the end of 1941 was $5,895.94, as alleged by respondent. The increases in deficiencies for 1943 and 1944 asserted by respondent are supported by the evidence of record. The next question is whether any part of the deficiencies determined against petitioner for 1942 to 1944, inclusive, is due to fraud with intent to evade tax. Section 293(b), Internal Revenue Code of 1939. *286 Respondent has the burden of proving fraud, and the proof must be clear and convincing. As already indicated, petitioner was negligent in failing to keep adequate books and records from which a correct computation of his income could have been made. We have frequently held that negligence is not sufficient proof of fraud. L. A. Meraux, 38 B.T.A. 200 (1938); Ned Wayburn, 32 B.T.A. 813 (1935). Here, however, we think that respondent has shown more than negligence. Petitioner's understatements for the three years for which fraud is charged were substantial in amount; he reported only one-fourth of the total net income charged to him by respondent. At various times in the taxable period petitioner maintained five bank accounts in different names. Business receipts were deposited in these accounts, and in 1944 petitioner paid for $20,000 worth of United States Government bonds by having debited a bank account in his wife's name in the amount of the purchase price. An additional $10,000 in bonds were bought by petitioner in the same year by endorsing over to the selling agent, a bank, checks made out to him in payment for produce, no record being made of the receipt *287 of the amounts of the checks. A year earlier petitioner bought a home at a cost of $8,500, which was paid for by drawing two checks - one for $6,500, the other for $2,000 - on a bank account in the name of his sister-in-law. For 1945 petitioner had his wife report a net income of $21,755.99 as having been earned by her. When questioned petitioner conceded that the income was properly attributable to him. Petitioner testified, but his testimony did nothing to allay the natural inference of fraud created by the pattern of conduct just described. Where understatements of income over a period of years are substantial in amount, the inference is created, in the absence of a satisfactory explanation, that such understatements were purposeful and not the result of negligence or accident. Additionally, the various transactions described above, by which petitioner tried to disguise or hide some of his assets, lead us to believe that petitioner was attempting to create the impression of having received less income than he actually did receive. There was no other satisfactory explanation. Therefore we find that the fraud penalties for 1942 to 1944, inclusive, were properly determined by respondent, *288 and that petitioner's returns for those years were fraudulent with intent to evade tax. For 1945 petitioner has conceded that income reported by his wife was properly attributable to him. The only other adjustment for 1945 relates to the inclusion of unreported sales in that year. Petitioner offered no evidence on this question; respondent's determination is therefore upheld. The remaining issue, which relates to 1946, is whether respondent properly included in petitioner's income for that year amounts reported by his wife as income received by her in partnership with petitioner. On this issue petitioner had the burden of showing from all the relevant circumstances that he and his wife "in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise." Commissioner v. Culbertson, 337 U.S. 733, 742 (1949). This petitioner has failed to do. His evidence on this question consisted of the written partnership agreement, dated January 1, 1946, whose terms we have summarized in our findings of fact. Petitioner's oral testimony on this question was merely to the effect that such a partnership existed. Under the circumstances *289 here we do not consider this evidence adequate to sustain the showing required of petitioner. In order to get the full flavor of the business relationship of the parties we need more than the formal document of partnership. Evidence was lacking of the extent to which the agreement's terms were actually carried out. There was no showing of the extent of petitioner's wife's participation in the business, except a passing reference to her helping out in the office at busy times, or of whether she actually controlled her share of partnership income. The wife's capital contribution recited in the agreement was derived from petitioner. Evidence is lacking which would establish the existence of a bona fide business partnership between the petitioner and his wife during the year 1946. On this issue, therefore, we hold for respondent. Decisions will be entered under Rule 50.