C. C. GUNN, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 16496.

United States Court of Appeals
Eighth Circuit.

Oct. 20, 1960.

Owen C. Pearce, Fort Smith, Ar'-,
Ralph W. Robinson, Van Buren, Ark.,

and Bethell & Pearce, Fort Smith, Ark., Owen C. Pearce, Fort Smith, Ark., on the brief, for appellant.

Harry Marselli, Attorney, Department of Justice, Washington, D. C., Charles K. Rice, Asst. Atty. Gen., Meyer Rothwacks, Robert N. Anderson and Lloyd J. Keno, Attorneys, Tax Division, Dept. of Justice, Washington, D. C., and Charles W. Atkinson, U. S. Atty., and Robert E. Johnson, Asst. U. S. Atty., Fort Smith, Ark., Harry Marselli, Washington, D. C., on the brief, for appellee.

Before VAN OOSTERHOUT and BLACKMUN, Circuit Judges, and REGISTER, District Judge.

BLACKMUN, Circuit Judge.

This action is one instituted by the United States against C. C. Gunn, hereinafter called the taxpayer, to collect federal income taxes and penalties for the calendar years 1943 and 1944. The trial court granted the government's motion for summary judgment. United States v. Gunn, D.C.W.D.Ark., 182 F.Supp. 623. The taxpayer has appealed. At issue is the scope and effect of this court's 1957 opinion, reported as Gunn v. Commissioner, 8 Cir., 247 F.2d 359, on an appeal taken by the taxpayer from decisions of the Tax Court. Although the issue now presented to us is narrow, the background facts are detailed and seem complicated. These facts deserve mention so that the case's nature is apparent. They are perhaps best presented chronologically:

1. The taxpayer timely filed federal income tax returns for each of the years 1942 to 1946, inclusive. Thereafter he and the Commissioner executed waiver agreements, where such were necessary, extending to June 30, 1950, the time for assessment of income taxes for those years; these agreements also provided that if a notice of deficiency in tax was properly sent to the taxpayer on or before June 30, 1950, then the assessment time was extended beyond that date by the number of days during which the Commissioner was prohibited from making an assessment and for 60 days thereafter.

2. In March 1950 the Commissioner sent the taxpayer a notice of tax deficiency for 1946. On April 14, 1950, he sent the taxpayer a similar notice of deficiencies for each of the years 1942 to 1945, inclusive; the deficiencies for 1942, 1943 and 1944 were based upon net worth calculations and the notice also asserted, under § 293(b) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 293(b), 50% fraud penalties for those three years. The taxpayer then filed with the Tax Court timely petitions for redetermination of these deficiencies and penalties.

3. The Tax Court on January 27, 1956, issued its findings and opinion [not officially reported but found at 15 T.C.M. 115 as Decision 21541(M)], which recited in part, "Therefore we find that the fraud penalties for 1942 to 1944, inclusive, were properly determined by respondent, and that petitioner's returns for those years were fraudulent with intent to evade tax". Orders of redetermination were issued April 27, 1956, setting forth the exact deficiencies in the taxpayer's income taxes for 1942 to 1946, inclusive, and the exact fraud penalties for 1942, 1943 and 1944.

4. The taxpayer timely filed a petition for review of these decisions with this court. He did not, however, file the bond required by § 7485 of the Internal Revenue Code of 1954, 26 U.S.C.A. § 7485.[1] The Commissioner, in line with the permission granted him under that section, then chose to make formal assessments of the deficiencies and fraud penalties. This was done on August 31, 1956, and a lien notice was thereafter filed for record in Crawford County, Arkansas.

---

1. Although taxes for years beginning prior to 1954 are here involved, this particular provision of the 1954 Code was in effect and applicable to that review. § 7851(a) (6) (C) (iv) of the 1954 Code, 26 U.S. C.A. § 7851(a) (6) (C) (iv).

5. On August 8, 1957, this court issued its opinion concluding with the recital, at page 366 of 247 F.2d:

"For the reason stated, the Tax Court's decision as related to the taxable years 1942–1944 is reversed, with remand for further proceedings, and the decision as related to the taxable years 1945–1946 is affirmed."

6. While this remand was pending in the Tax Court the taxpayer instituted an action in the United States District Court for the Western District of Arkansas to enjoin his District Director of Internal Revenue and the Director's collection officers from making any levy under the 1956 assessments; this was on the ground that those assessments had not become final. At that time the taxpayer tendered and paid the amounts necessary to cover the 1945 and 1946 deficiencies and accrued interest thereon. The court denied the government's motion to dismiss and granted a preliminary injunction as to the years 1942–4. Gunn v. Mathis, D.C.W.D.Ark., 157 F.Supp. 169, 175–179. This later was made permanent. A notice of appeal was filed by the government but was withdrawn on December 23, 1958.

7. In the continuing proceedings in the Tax Court that Court, on motion of the Commissioner, ordered the taxpayer to file an amended petition "making a further and better statement with respect to his net worth on December 31, 1941", and on any other dates he felt material, and also disclosing his living expenses and receipt of any nontaxable income. The taxpayer complied with this order. The alleged facts in the amended petition would, if proved, have established by the net worth method that the taxpayer had no income in addition to that which he had originally reported and that no deficiencies existed.

8. Thereafter the taxpayer and the Commissioner entered into a stipulation for use in the Tax Court and reading as follows:

"It is hereby stipulated that without considering the assessments made subsequent to the issuance of the deficiency notice:

"1. There is no deficiency in income tax and no penalty due from the petitioner for the taxable year 1942.

"2. There is a deficiency in income and victory tax in the amount of $5,701.22, penalty under section 293(a) of the Internal Revenue Code of 1939 in the amount of $333.21, claim for which is specifically hereby made, and no penalty under section 293(b) of the Internal Revenue Code of 1939, due from the petitioner for the taxable year 1943.

"3. There is a deficiency in income tax in the amount of $11,130.-26 and penalty under section 293(b) of the Internal Revenue Code of 1939 in the amount of $7,691.75 due from the petitioner for the taxable year 1944.

"Effective upon entry of decision pursuant to this stipulation petitioner waives the restrictions, if any, contained in the Internal Revenue Code on the assessment and collection of the deficiencies and penalties plus statutory interest."

The tax amounts so stipulated, exclusive of interest and penalties, in the aggregate were less than half of the total taxes for the 3 years as redetermined by the Tax Court by its 1956 order. The Tax Court on January 21, 1958, issued its decision, pursuant to this stipulation, containing similar references to § 293(a) and (b).[2]

9. The outstanding assessments of August 31, 1956, so far as they related to

---

2. § 293(a) of the 1939 Code, referred to in the stipulation and order, provides for the imposition of a 5% penalty where "any part of any deficiency is due to negligence, or intentional disregard of rules and regulations but without intent to defraud". § 293(b) imposes a 50% penalty where "any part of any deficiency is due to fraud with intent to evade tax".

the years 1942–4, were abated and new assessments as to 1943 and 1944, in line with the Tax Court's decision and including interest, were made on December 24, 1958, the day following the withdrawal of the appeal in the injunction suit. The taxpayer refused to pay these assessments.

10. The present suit seeking judgment for the amount of these 1958 assessments, less certain credits, was filed in June 1959. The taxpayer has raised the statute of limitations as an affirmative defense and has asserted that the limitation period had expired by the time the 1958 assessments were made and that they were of no legal effect.[3] The trial court decided this issue against the taxpayer.

It is clear that if the government had effected its new assessments within 60 days after April 21, 1958, (the expiration of the 3 month period allowed by § 7483 of the 1954 Code, 26 U.S.C.A. § 7483, for the filing of a petition for review of a Tax Court decision), there would be no question, under any theory of computation, as to the timeliness of those assessments. With the assessment having been made only on December 24, 1958, however, the limitations defense raised by the taxpayer could be effective (apart from the question of any further waiver by the stipulation) if, as he claims, the issue of fraud is not res judicata. If this court's opinion in 247 F.2d 359 and the ensuing judgment reversed the Tax Court's decision for the years 1942–44 for *all* purposes and left open the issue of fraud for determination in the further proceedings in the Tax Court, then, to the extent fraud is not found, § 276(a) of the 1939 Code, 26 U.S.C.A. § 276(a), eliminating any limitation period where

fraud is present, does not apply and the December 1958 assessment falls beyond the period specified by the waivers. The issue thus, as has been stated, centers in the effect of this court's prior opinion.[4]

The fact that the Tax Court litigation involved the Commissioner of Internal Revenue, whereas the present action is one instituted by the United States, of course affords no obstacle to the application of the rule of res judicata if its other conditions are met. Tait v. Western Md. Ry. Co., 289 U.S. 620, 53 S.Ct. 706, 77 L.Ed. 1405; United States v. Archer, 1 Cir., 174 F.2d 353, 356; Owens v. United States, 10 Cir., 177 F.2d 692, 693, certiorari denied 338 U.S. 955, 70 S.Ct. 493, 94 L.Ed. 589.

This court has said that upon "the remand of a case for a new trial, the only legal propositions which are ordinarily no longer subject to question are those settled and determined by the appellate court's opinion", Strimling v. Stone, 8 Cir., 194 F.2d 920, 921, and that "the legal propositions which this Court settles and determines on the appeal cannot ordinarily be again questioned", Millers' Mut. Fire Ins. Ass'n of Illinois v. Bell, 8 Cir., 99 F.2d 289, 292. This principle has been applied in tax litigation. Johnson v. Commissioner, 8 Cir., 105 F.2d 454, 456, certiorari denied 308 U.S. 625, 60 S.Ct. 380, 84 L.Ed. 522; Houston v. Commissioner, 3 Cir., 53 F.2d 445, 447. These and other tax cases afford pertinent examples of the scope of operation on remand: Swenson v. Commissioner, 5 Cir., 69 F.2d 280, 281; Commissioner of Internal Revenue v. Lincoln Electric Co., 6 Cir., 176 F.2d 815, 818; Polish Army Veterans v. Commissioner, 3 Cir.,

---

3. The taxpayer asserts that this would be so whether one makes a computation of time under the theory advanced in Hoosac Mills Corporation v. Commissioner, 1 Cir., 75 F.2d 462, 464, or pursuant to the allegedly contrasting theory of Olds & Whipple v. United States, 22 F.Supp. 809, 819, 86 Ct.Cl. 705; Continental Oil Co. v. United States, 14 F.Supp. 533, 540, 83 Ct.Cl. 344, certiorari denied 301 U.S.

694, 57 S.Ct. 921, 81 L.Ed. 1349; Brooks v. Driscoll, 3 Cir., 114 F.2d 426, 431; and Bales, 22 T.C. 355, 359.

4. The taxpayer in his briefs has initially argued the effect of the Tax Court's 1958 decision. We feel that this is a mistaken approach and that the determinative judicial action is this Court's 1957 opinion and judgment.

236 F.2d 509, 513; Penton v. United States, 6 Cir., 264 F.2d 477.

Just what, then, was decided by this court on the appeal from the Tax Court? It is of interest to look first at the judicial comments on the fraud issue as they already appear in this extended litigation:

1. The Tax Court's opinion of January 27, 1956, leaves no question as to its attitude. It observed that the Commissioner had the burden of proving fraud by clear and convincing proof and that this taxpayer was negligent in failing to keep adequate books and records; but it then held that the Commissioner "has shown more than negligence" and it concluded, as has been noted, that the taxpayer's returns for 1942–4 "were fraudulent and with intent to evade tax" and that the fraud penalties imposed were proper.[5]

2. The District Court's opinion in the injunction suit, reported in Gunn v. Mathis at 157 F.Supp. 169, contains references to our opinion in 247 F.2d 359. Specifically, the District Court said, 157 F.Supp. at page 178:

"Thus, as to the years 1942, 1943 and 1944 the case is back in the Tax Court for a decision on the merits. * * *

"The only thing settled by the opinion of the Court of Appeals in the instant case is the tax liability for the years 1945 and 1946. The case was remanded to the Tax Court as to the years 1942, 1943 and 1944 and, as above pointed out, the Tax Court is free to determine the amount of the deficiency, if any, chargeable to the taxpayer. It is true that the Court of Appeals stated that it would have permitted the Tax Court decision to stand if it had not been for the unrealistic finding with regard to the opening net worth. Nevertheless, in view of the

unrealistic finding the court reversed the Tax Court decision and remanded the case to the Tax Court with the privilege given to the parties to introduce any additional evidence relating to the amounts of the deficiencies, if any, for the years 1942, 1943 and 1944."

This language seems to carry at least an implication that the remand was one for broad purposes.

3. Further comment appears in the trial court's opinion at 182 F.Supp. 623, 630, 632. The trial judge quoted his own comments in his injunction opinion, stated that the only question he resolved there was that the 1956 assessments had been superseded by the Tax Court's 1958 decision, and observed that the question presently before him was whether the Tax Court's judgment was res judicata of fraud. He noted that the taxpayer's contention that the remand was for a retrial upon all questions, including fraud, appeared to be controverted by the Tax Court's order requiring the taxpayer to file an amended petition setting forth a better statement of beginning net worth. He said:

"All that the mandate of the Court of Appeals required of the Tax Court was to correctly establish the net worth of defendant as of December 31, 1941, and from that beginning to determine the deficiency in tax and penalties, if any."

He described the stipulation as a compromise and held that "even though" this court's reversal was one for all purposes, the stipulation, in any event, was equivalent to a closing agreement of the kind contemplated by § 7121 of the 1954 Code, 26 U.S.C.A. § 7121 and conclusive upon the parties.

■ These comments of the Tax Court and of the District Court and any implications which might be drawn therefrom, while revealing, are not, of course, binding upon us.

5. The Tax Court's exact language on the fraud issue is set forth in full in Footnote 1 of the trial court's opinion at 182 F. Supp. 623–624 and need not be repeated

here. The court naturally issued no opinion accompanying its January 21, 1958, decision entered pursuant to the stipulation.

With this background, we examine our opinion in 247 F.2d 359. The bulk of that opinion was concerned with the Commissioner's failure to include any cash whatever among the taxpayer's starting assets as of December 31, 1941, for the computation of income on the net worth method. This failure and its approval by the Tax Court were held to be "such a mathematical artificiality and so unrealistic as a general or business fact, as definitely and firmly to convince of error". It was then said, at page 365 of 247 F.2d:

"On the record before us, the decision of the Tax Court, for lack of realistic consideration and evaluation as discussed above, is reversed as to the redeterminations of deficiencies, made by it for the years 1942, 1943 and 1944, predicated upon the net-worth figure used by it for December 31, 1941, and as to the penalties dependent thereon for their amounts. The parties should on further hearing or proceedings be given the opportunity to introduce any additional evidence available to them, in respect to petitioner's net worth on December 31, 1941, and to any other element relating to the amounts of the deficiencies for the three years mentioned.

"It should be added that, while petitioner thus is being accorded the privilege of introducing further evidence generally on his 1942, 1943 and 1944 tax liability, because of the reversal required from the unrealisticness on the present record of the zero-cash determination made as to the opening net worth, the situation is one in which otherwise the decision of the Tax Court in its various aspects would have been permitted by us to stand. * * *

"The question of whether there had been fraud with intent to evade taxes, under 26 U.S.C.A., Int.Rev. Code of 1939, § 293(b), was one of fact for the Tax Court on the elements as a whole, of the circumstances, conduct and incidents related to the taxpayer's business and attendant upon his tax returns, and one which we are not entitled to disturb, where, as here, it rests on clear and convincing evidence."

The taxpayer's position that the effect of the 1957 reversal was to remand the 1942–4 issues for a complete and new hearing, with full rights in the parties to introduce evidence on all aspects of the case, might find some support in language of the opinion which, when isolated, speaks of allowing the parties "opportunity to introduce any additional evidence available to them" as to beginning net worth, "any other element" and "further evidence generally", and in the "remand for further proceedings".

We feel, however, that a careful reading of this court's opinion clearly demonstrates (a) that the remand was occasioned for one reason only, namely, the unfairness inherent for this particular case, in the absence of a realistic beginning cash figure, (b) that the remand, nevertheless, was not limited to the ascertainment of the proper *cash* amount but contemplated the presentation of any evidence bearing on net worth as of December 31, 1941,[6] (c) that this, however, marked the *limit* of the scope of the remand, and (d) that the issue of the existence of fraud in connection with the taxpayer's returns for 1942–4 was decided and, upon the judgment becoming final, was res judicata. This court's language concerning only "any other element relating to the amounts of the deficiencies", and its observation that except for the lack of realism on the zero cash determination "the decision of the Tax Court in its various aspects would have been permitted by us to stand", and the statement that the question of fraud "was one of fact * * * and one which

---

6. Of course, if such evidence served to prove that there was no deficiency in tax for a particular year, the penalty under § 293(b) would also disappear for that year, for it rests upon and comes into being only with a deficiency. This was the effect of the stipulation as to 1942.

we are not entitled to disturb, where, as here, it rests on clear and convincing evidence", render this conclusion inevitable.

It follows, therefore, that with the presence of fraud a decided issue, § 276 (a) of the 1939 Code applies and the assessment could be made and a tax collection action could be begun "at any time". The assessment of December 24, 1958, thus was not barred by the statute of limitations and was valid.

This leaves for consideration the question of the effect, if any, of the stipulation and of its elimination of tax and penalty for 1942 and of its characterization of the penalties for 1943 and 1944 as negligence and fraud penalties, respectively. We can accept the taxpayer's argument that legal conclusions may not be stipulated. Swift & Co. v. Hocking Valley Ry. Co., 243 U.S. 281, 289, 37 S.Ct. 287, 61 L.Ed. 722; Hanson v. Ford Motor Company, 8 Cir., 278 F.2d 586, 593; Davis v. Commissioner, 7 Cir., 241 F.2d 701, 703. This, however, hinders rather than promotes this taxpayer's cause. Fraud has been determined to exist and it is not now to be stipulated away or its pervading presence altered. We therefore agree with the District Court that the stipulation was only, in effect, an agreed mathematical computation of the aggregate tax and penalties due. It could, indeed, amount to no more than that.

This makes it unnecessary to consider the government's alternative contention that by the very terms of the stipulation the taxpayer further waived any otherwise applicable limitation period.

Affirmed.